[No. 2034.]

THE NATIONAL BANK OF COMMERCE OF KANSAS CITY v. GRAHAM AS ASSIGNEE OF REITHMANN AND REITHMANN & COMPANY.

1. ASSIGNMENT FOR BENEFIT OF CREDITORS—ASSENT OR REFUSAL OF CREDITORS—KNOWLEDGE OF ASSIGNMENT.

Where an assignment is made for the benefit of all the creditors of the assignor, the right of any creditor to participate in the benefits of the assignment depends upon his assent to such assignment, and his refusal to assent thereto may be inferred from his acts, but such inference can be drawn only from acts of the creditor done with the knowledge that an assignment had been made, or at least that it was in contemplation.

2. SAME—ATTACHMENT.

The levying of an attachment by a creditor upon the property of his debtor after the debtor had made an assignment for the benefit of all his creditors, would not be sufficient to deprive such creditor of the right to participate in the benefits of the assignment if the attachment was levied without any knowledge of the assignment by the creditor.

3. SAME.

Where a creditor, without any knowledge of the assignment, levied an attachment upon the property of his debtor after the debtor had made an assignment for the benefit of all his creditors, such attaching creditor is not required to release his attachment lien thus innocently acquired before he can present his claim and have it allowed by the assignee.

*Appeal from the District Court of Arapahoe County.*

Mr. W. W. ANDERSON and Mr. ELIJAH ROBINSON, for appellant.

Messrs. HARTZELL & STEELE, for appellee.

WILSON, P. J.

This is a contest between the assignee of an insolvent debtor and a creditor, on an application for the allowance of its claim against the estate. The case was submitted and tried on an agreed statement of facts. From this it appears that in June, 1894, the German National Bank of Denver executed and delivered to the National Bank of Commerce of Kansas City, its promissory note for a certain sum of money, with John J. Riethmann and J. J. Riethmann and Company, as sureties. On October 9, 1894, the note having matured and being unpaid, the payee commenced suit on it in the circuit court of the United States for the district of Colorado. On October 25, following, the plaintiff sued out a writ of attachment in aid of its suit, and on the same day caused it to be levied on a large amount of real estate, and also upon several thousand shares of stock of The Denver Tramway Company, and The Denver Consolidated Tramway Company, standing in the name of John J. Riethmann on the books of those companies. On the same day of this attachment, Riethmann, and Riethmann and Company executed a general assignment for the benefit of all their creditors. The deed of assignment was delivered to the assignee, and was filed for record in the office of the clerk and recorder of Arapahoe county on the day of its execution and prior to the levy of the writ of attachment,—how long prior is not stated, and is immaterial. Thereafter, the Bank of Commerce at the request of the assignee released from its writ of attachment all the real estate which it had seized thereunder, and executed to the assignee a quitclaim deed therefor. All the stock levied upon under the writ of attachment had prior to the execution of the assignment and levy of the writ of attachment, been assigned, transferred and delivered to other creditors by Riethmann, as collateral security for his indebtedness to them, with the exception of one certificate for fifty-three shares which had been delivered to the assignee. This last certificate for fifty-three shares was also released from the

attachment. The plaintiff bank, however, still retained its lien upon the other shares of stock, claiming that the attempted transfer or pledge thereof was invalid, because prior to the time of the levy thereon of the writ of attachment, no memorandum of such transfer had been entered upon the books of the tramway companies, as required by statute. Mills' Ann. Stats. sec. 508; Gen. Stats. sec. 269. In due time, the bank presented its claim to the assignee for allowance. This was resisted, and refused by the court upon the ground that there was no consideration moving to said Riethmann, and Riethmann and Company, to sign the note as sureties. From this judgment an appeal was taken to this court, and it was reversed at the September term, 1897, and the cause remanded. *Bank v. Graham*, 10 Colo. App. 373. In the meantime, the bank had pressed its suit in the federal court to judgment, and thereupon caused a special execution to be issued and the same to be levied upon the stock of the tramway companies which had been previously seized under the writ of attachment, and caused the same to be sold. At the sale, the stock was bid in for the claimant at the sum of $175, to which extent its judgment was satisfied. Upon the return of the cause from this court, the assignee filed additional exceptions to the allowance of the claim upon the ground, in substance and effect, that by reason of the facts which we have stated, the plaintiff had elected not to accept the benefits of the assignment, and by its action had deprived itself of the right of participation with other creditors in the general assets of the assigned estate.

In the view which we take of the case, it does not involve a determination of the question as to what interest the assignee acquired by the deed of assignment in the stock previously pledged as security for a debt; nor whether the claimant acquired by his attachment any lien superior to, or taking precedence of, that of the assignee; nor a consideration of the statute upon which the claimant relied to defeat the pledge or transfer of the stock made by Riethmann. The sole question presented—the only one upon which we shall express

an opinion—is, Had the claimant by its acts deprived itself of the right to have its claim allowed against the insolvent estate, and participate in its assets ? Counsel on both sides have presented elaborate and able arguments, and have cited us to numerous adjudications in other states. Many of these decisions, however, are not applicable, because the subject of assignments for benefit of creditors is fully covered by statute in this state, as well as the method of procedure therein. The statutes in relation to this subject differ in the various states, and it would therefore be unsafe to follow the decisions in other jurisdictions, however persuasive they might be, without a full knowledge and examination of the statutes upon which they are based. We are relieved of the necessity of search for, and critical examination of these statutes, because it is quite clear that the principle involved here has been decided and settled by adjudications in our own state. In a case pending in this court, in a well considered opinion written by Judge Thomson, it was said : " It is not compulsory upon a creditor to assent to an assignment made for his benefit in common with other creditors, but his right to a proportionate share of the assets depends upon such assent. It is not permitted to him to blow hot and cold. He cannot repudiate an assignment and at the same time participate in its benefits. A seizure and sale by one creditor, under summary process of a portion of the assets, diminishes to that extent the general fund out of which the debts are to be paid. The petitioners, as is alleged, attached a considerable portion of the property assigned, to satisfy their individual claim ; and having so prevented the assignee from administering the whole estate for the benefit of all interested, it would be manifestly unjust to the other creditors to permit the petitioners to share with them the avails of the residue." *Beifeld v. Martin*, 4 Colo. App. 580. In that case, the assigned property was levied upon after the assignment, but there was no pretense that at such time the plaintiff in the attachment suit had no knowledge, actual or constructive, of the previous execution of the deed of assignment.

Presumably therefore he had such knowledge. In the case at bar, the execution of the deed of assignment and the levy of the attachment writ were on the same day. In the agreed statement of facts, no reference is made to any actual knowledge, or want of knowledge, by the plaintiff at the time of the levy of the writ, of any assignment. In its answer, however, to the exceptions of the assignee, it specifically alleges that it had no knowledge of any deed of assignment having been executed at the time when it caused its writ of attachment to be levied. It would clearly appear from the *Beifeld* case, which stands unquestioned and which has been cited approvingly by the supreme court, that it is the refusal of a creditor to assent to an assignment made for his benefit in common with other creditors, which bars his right to afterwards come in and share in the assets of the estate. Of course this refusal or dissent may be inferred from the acts of the party, but it needs no argument to sustain the proposition that such an inference could be drawn only from acts of the party done or made with the knowledge that an assignment had been made, or at least that it was in contemplation.

Another case in this court, and one which has been expressly approved by the supreme court, and which is subsequent to that of *Beifeld v. Martin*, throws still further light upon the question here under consideration. *Spangler v. Sanborn*, 7 Colo. App. 102; *Thatcher v. Valentine*, 22 Colo. 202. In that case, in the discussion of the question of notice to, and the presumption of assent of, a creditor under the provisions of section four of the assignment statute, which is to the effect that in case of an assignment the assent of the creditors shall be presumed, the court said: " Generally speaking, the term ' assent ' implies knowledge of some kind, in the party assenting, to that to which he assents. A party cannot very well be said to assent to, or dissent from, something of which he is supposed to be in ignorance. Section 4 is not definite upon the subject. It merely declares that in cases of assignment, the assent shall be presumed. This language alone does not enlighten us; but by reading the section in connec-

tion with section 7, we think its interpretation is not a matter of difficulty." The court then refers to the provisions of section 7, requiring notice by publication to be given by the assignee, and adds, " Section 1 does not make the record of the deed of assignment constructive notice to creditors, and the fact that notice is specifically provided for elsewhere, is evidence that it was not intended to be such." Again, on page 107; " In order that purchasers and incumbrancers may be affected with notice, other than actual notice, the prescribed method must be pursued, and it follows that in the absence of the statutory notice, *bona fide* purchasers and incumbrancers will be protected." And again, on page 108, " The lien of an attaching creditor is an incumbrance equally with a mortgage." In the case before us, the bank had no actual knowledge or notice of the execution of the deed of assignment, and even though this deed was filed for record before the levy of its writ of attachment, it follows from the rule announced in the *Spangler* case that it had no constructive notice of the execution of such deed. Its act, therefore, in causing the writ of attachment to be issued and levied, was not an act hostile to the assignment, because done without notice or knowledge of it, and hence its right to have its claim allowed was not lost, forfeited, or barred by reason of this act.

It is not and cannot be contended that it was incumbent upon the creditor to have released and abandoned the lien thus innocently acquired, before it could come in as a creditor, and participate in the assets of the estate, nor that its acts subsequent to acquiring knowledge or having notice of the assignment in pursuing and enforcing its attachment lien defeated such right. Under the circumstances of this case, it being held that the levying of the attachment writ which initiated the lien was not such an act as would bar the allowance of the claim, the claimant had the same right to hold and enforce its lien as would a creditor whose debt had been secured by mortgage executed prior to the assignment. A deed of assignment does not destroy valid antecedent liens

upon the assignor's property, nor the right of the holder to enforce them. The assignee takes the property subject to all subsisting valid liens. The secured creditor having credited upon his debt the proceeds of his security has a right to participate with other creditors and upon an equal footing with them in the assets realized from the assignment to the extent of the unpaid residue of his debt. These are fundamental and well established principles of the law of assignments, which need not be supported by any citation of authorities. From the facts set forth in the agreed statement, the claimant was entitled to have its claim allowed, and the court erred in refusing it.

Two cases strongly relied upon by the assignee are not in point. *O'Bryan Bros. v. Glenn Bros.*, 91 Tenn. 107 ; *Valentine et al. v. Decker*, 43 Mo. 583. In the first cited case, the creditor had assailed the deed of assignment itself by suit, in which he sought to have it declared fraudulent and void, and afterwards sought to escape the consequences of his act by claiming that through it the estate had suffered no loss or injury, because his suit had been ineffectual. The court, however, said in effect that his election had been made by a direct and unequivocal act, and he was bound by it. In the Missouri case, the creditor subsequent to the assignment, and with full notice of it, and after the assignee had given bonds, filed an inventory, and taken actual possession of the assigned effects, caused an attachment writ to be levied upon the assigned property.

Upon the facts presented, the claim of the appellant should have been allowed, and the judgment will be reversed.

*Reversed.*